# THOMAS C. STUMP and others, *vs.* ROBERT HENRY and others.

A bill in equity, sworn to by the party and containing statements in reference to his title to certain lands, may be used in another case in chancery affect-

ing the same lands, as evidence against one claiming under such party in regard to the title under which the party so claiming holds.

Where possession alone is relied on to confer title to land, it must be adverse, exclusive and continuous for more than twenty years.

Where land is sold at sheriff's sale, the title of the defendant in the judgment is vested in the purchaser by operation of law.

A right of entry cannot be barred by possession alone unless it be adverse, exclusive and continuous for twenty years, and any recognition or acknowledgment of such right by the party in possession, will prevent his possession from operating as a bar to such right until twenty years after the acknowledgment has been made.

Payment of part of a mortgage prevents the bar of limitations for twenty years afterwards, though the mortgagor may have been in possession for upwards of nineteen years prior to the payment.

APPEAL from the Equity Side of Harford county court.

This bill was filed on the 28th of September 1841, by the appellees, heirs at law of Isaac Henry, deceased, for partition of certain land, of which they claim one undivided third, the other two-thirds belonging, as they say, to the appellant Stump.

The complainants insist, that their father, Isaac Henry, together with Sample and Woolsey, purchased the land on the 29th of October 1817, at sheriff's sale, under an execution upon a judgment of Sample against John Richie, the original owner, and took a deed therefor from the sheriff, dated the 8th of August 1818. That subsequently, in 1818 and 1824, Parker Forwood purchased out, and received conveyances for Sample and Woolsey's interest in the land, and that Forwood's interest, so acquired, passed to Stump, as purchaser at trustee's sale in January 1840, under a decree in chancery, passed on the 12th of August 1839, in a case between Richie and Forwood, commenced in 1836, the proceedings in which are sufficiently stated in the opinion of this court.

Stump denied the complainants' title, relied upon limitations, and insisted that all the title of Richie passed to him under the chancery sale; that Richie remained in possession of the land from before 1812 till his death in 1841, claiming title to it and using it as his own by selling timber, &c.; that

Isaac Henry never made any claim, and neither he nor any one claiming under him ever had possession.

The court below, (Le Grand, A. J.,) being of opinion that the evidence did not show either an ouster or twenty years adverse holding by the defendants and those under whom they claim, decided that the statute of limitations did not apply, and passed a decree for a sale for the purpose of partition, from which the defendants appealed.

The cause was argued before Eccleston, Tuck and Mason, J.

*Otho Scott* for the appellants.

1st. Isaac Henry acquired by his purchase at sheriff's sale nothing but a right of entry, such sale not passing the possession as a deed from the owner would, and as Richie never surrendered the possession, and no proceedings were ever instituted by Henry to obtain possession, his right of entry was barred by the lapse of twenty years after the sheriff's sale and he could not recover in ejectment, and therefore could not in equity. Henry was under no disability, and I know of no case in which such lapse of time has not been held to be a *flat bar*. The claim of the appellees is therefore a stale demand. 2 *G. & J.*, 310, *Watkins vs. Harwood*. 3 *Gill*, 161, *Dugan vs. Gittings*. 7 *Do.*, 76, *Sindall vs. Campbell*.

2nd. No actual ouster by Richie was necessary, he was in possession as owner, not as joint claimant with Henry or his heirs, and Henry never had such possession as rendered an actual ouster necessary to give efficacy to the statute of limitations. Sample and Forwood never took possession. One of the exceptions to the rule, as to joint holding, is that of long continued holding, which raises a presumption of ouster. Forwood was but a mortgagee not in possession, and the statute began to run from the date of the sheriff's sale. The defendant in the judgment is not after such sale the tenant of the purchaser; the latter cannot get possession nor require rent except by a judicial proceeding. When the possession

in such case is withheld it must of necessity be *adversary.* But even if the three purchasers were joint tenants and Richie had settled with two of them, and held the whole land for more than twenty years, it would have raised the presumption that he had settled with the other.

3rd. The answer denies all title in the complainants and clearly puts them upon proof, and all that they have shown is the sheriff's deed without the judgment or the *fi. fa.* I do not contend that on a bill in chancery, where the parties get back to a common title, it is necessary to exhibit patents, but it is clear that where a sheriff's deed is relied on as title, the execution and judgment under which the sale was made must be produced, or their loss proved and secondary evidence of their contents given. *1 H. & G.*, 174, *Fenwick vs. Floyd.*

*Henry W. Archer* for the appellees.

1st. We insist that the possession of Richie and Forwood, was the possession of Isaac Henry, their co-tenant under the same deed, and that the possession of one cannot be considered adversary to the others without proof of actual ouster. Richie as defendant in the judgment might have held over and claimed adversely, but in 1836, in less than 20 years, he is forced into chancery and there tells the whole story of the transaction truthfully. He says in his bill that *all his interest* was sold under the judgment, and was purchased by the three parties, one of whom was Henry; that *he* purchased through Forwood the two thirds from Sample and Woolsey. In what position does that place him but that of joint tenant with Henry? His claim is an equitable interest in two thirds; he does not set up an outside title. Stump purchased at the trustee's sale in that case, and all that the decree there professed to sell was the interest of the parties to the case, *two undivided thirds:* At the sale notice was given that Henry's heirs claimed the other third. Under such circumstances there is no equity in the defence set up by the appellants.

2nd. There is no proof of any ouster. On the contrary Forwood admitted the title of the appellees up to the time of

his death in 1835, and Richie did not deny it until 1839. It does not appear that Henry or his heirs ever knew of any adversary claim, but on the contrary, Richie admits by his bill in 1836, that he had held the land jointly with Henry and his heirs since 1818, and exhibits the sheriff's deed as the foundation of the title he then claimed, and which the appellants in fact purchased. It is said that as to a purchaser at sheriff's sale, limitations will run from the day of sale in favor of the defendant in the judgment, but the statute will not begin to run until the defendant does some act showing that he holds adversely. 7 *Humph.*, 517, *Wood vs. Turner.* The law regards, in such cases, the defendant as the *quasi* tenant of the purchaser, and does not deem him as holding adversely until he does, some act showing that he claims adversely. Exclusive possession, in this case, was not adversary, because the holding was consistent with the right of Henry's heirs. A party claiming under a deed is bound by the recitals in it, and is estopped from denying them. 4 *Denio*, 480, *Chatauque Co. Bank, vs. Risley.* What is adverse possession is a question of fact and not of law. Wherever one party by word or deed says he holds in a capacity consistent with that of the other, his holding from that moment ceases to be adverse, until he makes it so by some act made known to the other party. 3 *Gill*, 161, *Dugan vs. Gittings.* We have clearly shown a joint holding, and in such a case the possession of one is the possession of all, until actual ouster and notice to the co-tenant. 2 *Lord Raymond*, 829, *Reading vs. Rawsterne.* *Coke Litt.*, 198, *b.* 2. 2 *Salk.*, 422, *Reading vs. Royston.* 18 *Penn. State Rep.*, 506, *Peck vs. Ward.* Henry and his heirs could even have sustained an ejectment, the proof showing a tenancy in common. 2 *H. & McH.*, 254, *Lloyd vs. Gordon.*

3rd. The last point made by the appellants, presents a question not raised in the court below, the only point there raised and decided being upon the defence of limitations. But again, they admit that they hold under the *same sheriff's deed* that we hold under. There is no controversy back of

this deed, and there is no necessity to go behind it. But this is not an ejectment with defence on warrant, but a case in equity on bill and answer, where the proof must be in conformity with the case made out. Here their answer refers to the proceedings in chancery as their own title paper, and they cannot gainsay the title they set up. Why don't they object that the patents were not filed, if we are bound by the same rules as in an ejectment at law. But we have fully satisfied the strictest proof, for we show an admission that the appellants hold as tenants in common with us. This admission, though made in the bill in chancery in another case, is still admissible, for it is an admission as to title, which is admissible no matter when or where made.

Eccleston, J., delivered the opinion of this court.

The complainants, (the present appellees,) as heirs at law of Isaac Henry, claim title to one undivided third part of certain lands, situate in Harford county, the remaining two thirds of which they say belong to the defendant Thomas C. Stump. And the bill is filed to effect a partition. Stump, (who is in fact the only defendant having any real interest in the controversy,) denies in his answer, the title of the complainants, and relies upon limitation. It will be seen however, that in reference to his own title, he says "he purchased said lands from the trustee appointed by the chancellor to sell all the interest of John Richie and John Forwood in said lands, and hence this defendant avers that he holds and claims all of said lands that was ever owned, held or claimed by said Forwood and Richie." Again this defendant says: "That the complainants are probably entitled to some part of some of the named tracts, which is not claimed by defendant, but this is not admitted or denied by this defendant, but merely stated by way of making it plain what this defendant claims, which is, all that was held, possessed or claimed by either said Richie or said Forwood." It is evident then that Stump claims under Richie and Forwood.

The appellees' counsel has insisted, that as Stump, in his

answer, says he purchased the land from the trustee appointed by the chancellor to sell the interest of Richie and Forwood, as the proceedings in that case are in the present record, the matters alleged or stated in the bill filed by Richie, may be used as evidence in regard to the title under which he held the land.

Admitting it to be true, as a general rule, that a bill in another cause cannot be used as evidence, the rule does not apply in a case like the present. In the first place the bill referred to is not simply signed by a solicitor, but is sworn to by the complainant. In addition to which, the answer of Richie to the cross-bill filed by Parker Forwood, admits the filing of the bill now sought to be used as evidence, and states it was for the purpose of obtaining a reconveyance of the lands mentioned therein. Under such circumstances it cannot be doubted that the plaintiffs may use the bill as evidence. 1 *Greenlf. on Ev.,* sec. 551. 2 *Hall's (N. Y.,) Rep.,* 444, *Belden vs. Davies.* 4 *Alabama,* 227, *Durden vs. Cleveland.* 2 *A. K. Marshall,* 491, *Rankin vs. Maxwell.*

The bill states the lands were sold under an execution to satisfy a judgment of John Sample's against Richie, and were purchased by Henry Woolsey, John Sample and Isaac Henry; making reference to the deed of John Moore as sheriff of the county, to the three purchasers: That the lands were sacrificed for a mere trifle compared with their actual value, and being anxious to regain them, with a view to accomplish this object, he (Richie,) applied to John Forwood, who, partly out of friendship and partly to secure a debt due to him, consented to advance money enough, with what Richie could raise, to repurchase the land from Woolsey, Sample and Henry; on condition that the deed should be made to Forwood, with the understanding that when the money so advanced should be refunded and his other claim paid, he would reconvey the property to Richie: That in accordance with the arrangement, Forwood purchased from Woolsey, in 1818, all his interest in the land, the deed for which was made to Forwood, and is referred to: That in 1824, he also

purchased of James Johnson and John Kelly, the interest which Sample had held in the land, he having sold the same to Johnson and Kelly, who gave a deed to Forwood, to which reference is also made.

Under Richie's bill, the heirs of John Forwood were made defendants, he being dead. Under the bill filed by Parker Forwood, one of the defendants in the first case, Richie and others are defendants. By agreement, the two causes were consolidated and a decree passed, on the 12th of August 1839, for the sale of the lands mentioned in the proceedings, the money arising from the sale to be brought into court, to be distributed as the chancellor might direct.

At the sale by the trustees under this decree, Thomas C. Stump, (the present appellant,) became the purchaser of the lands now in controversy.

The plaintiffs as the heirs at law of Isaac Henry, claim an undivided third part of the land, to which they contend he became entitled by virtue of the sheriff's sale. The defence made in argument, in opposition to this claim is, that Richie remained in possession from before 1812, till his death in 1841, claiming title and using the land as his own, by selling timber; and that Isaac Henry never made any claim, never had possession, nor had any one claiming under him.

If the title of Richie is upon possession alone, then it must be adverse, exclusive and continuous for more than twenty years. Was it so for that time, prior to the filing of this bill, on the 28th of September 1841? It surely was not, when according to his own bill filed in 1836, he admitted the land had been sold under an execution upon a judgment against himself; that he was anxious to regain it, and for that purpose entered into the arrangement with Forwood, who accordingly purchased the rights of two of the three purchasers who acquired title to the land under the sale by the sheriff: the deed to Forwood for Woolsey's part bearing date in 1824. The object of that bill, was to obtain from the heirs of Forwood a conveyance of the title he had acquired under the arrangement, upon payment of the money due to him by Richie.

The two deeds to Forwood are in evidence, and both recite the sale by the sheriff to Sample, Woolsey and Henry. The sheriff's deed is also before us and that sets out the *fieri facias*, in which is recited the judgment, corresponding with the statement or admission in Richie's bill.

By operation of law, under the sale made by the sheriff, Richie's title was vested in the purchasers. 5 *H. & J.*, 226, and 6 *H. & J.*, 204, 205, *Barney vs. Patterson.* But it has been said by the defendants' counsel, that although a sale by a sheriff, with his deed in pursuance of it, will give to the purchaser a right to possession, the possession is not thereby transferred, so that the subsequent holding of the defendant in the execution, is to be considered as the possession of the purchaser. And if this be so, inasmuch as Richie continued to hold the land for more than twenty years, subsequent to the sale, the title acquired by Henry to one-third of the land was barred by limitation. If, however, it should be conceded that Henry, with the other purchasers, did not acquire actual possession, but only a right of possession, still such right could not be barred by possession alone, unless it should be adverse, exclusive and continuous, for at least twenty years. And any recognition or acknowledgment of such right, by the party in possession, will prevent his possession from operating as a bar to such right, until twenty years after the acknowledgment has been made.

In England a bond is presumed to have been paid twenty years after date; but payment of any part within that time, would require twenty years subsequent to the payment to defeat the claim. And payment of part of a mortgage will prevent it from being barred by limitation, for twenty years afterwards, although the mortgagor may have been in possession for nineteen years and upwards, prior to the payment.

Taking Richie's bill in connection with his answer to Parker Forwood's bill, the sheriff's deed and the two deeds to John Forwood, we think there is proof of such a recognition of the title of Isaac Henry, the father of the complainants, by Richie, as would prevent him, if he were the defendant in

this proceeding, from successfully resisting the claim of the complainants. And as Stump claims through him his condition can be no better.

But it has been contended, that the decree in favor of the appellees must be reversed, because their claim rests upon the sale by the sheriff, and although his deed is in evidence the judgment and *fieri facias* are not, and this is a defect in the complainant's proof. If this should be admitted, still we would not reverse the decree, but as there can be no doubt that there is such a judgment and *fieri facias*, and inasmuch as the cause must, at all events, be remanded for further proceedings, we will send it back, without reversing or affirming the decree, under the act of 1832, ch. 302; when the additional proof can be put in. The court will sign a decree accordingly.

> *Cause remanded for further proceedings to the circuit*
> *court for Harford county, sitting in equity.*