Vanneman v. Swedesboro Loan and Building Association.

CHARLES L. VANNEMAN et al.

*v.*

THE SWEDESBORO LOAN AND BUILDING ASSOCIATION.

L., being the owner of building loan stock, purchased loans; he used the money in purchasing a lot, and in erecting a dwelling thereon, taking the title in the name of his wife, and she gave a bond and mortgage on the lot for the amount loaned, he not joining therein; after this, both L. and his wife joined in a mortgage to the present complainants; then the association, the present defendants, filed a bill against Mrs. L. and these complainants for relief, in which, amongst other things, it alleged that said loan was made to Mrs. L.; it was held in this court that the loan was an equitable lien on the land, and prior to the lien of the mortgage given to the complainants; the sale of the land did not produce enough to satisfy the amount due the association; in the meantime the association had taken a bond from L. and his wife for the whole amount of the loan; and, about the time of the filing of the bill, had taken an assignment of the stock, through the wife, to itself as collateral; after the determination of that suit in behalf of the association, the present complainants obtained a judgment at law against L., and have filed this bill, in which they attack that assignment, insisting that it was fraudulent, because voluntary, and that it was, in legal effect, voluntary, because the association had, in their bill, alleged that the debt was the debt of Mrs. L., by which allegation it was bound. —*Held*, that the decree in that case did not rest on that allegation, and therefore that such allegation is not conclusive; *held also*, that the debt being the debt of the husband, he had a right to secure its payment, and that the assignment for that purpose, though first made to the wife, and by her to the association, was not a badge of fraud; and *held likewise*, that bills in chancery are, ordinarily, but slight evidence, without more, of the statements contained in them, and that advantage cannot be taken of such statements, unless it is shown that the party relying upon them has been misled to his prejudice.

*Mr. R. T. Miller*, for complainants.

*Mr. C. G. Garrison*, for defendant.

BIRD, V. C.

This is a creditor's bill. In 1871 Lecroy became a member of the defendant association, and the owner of seven shares of its stock. In 1872 he purchased seven loans of the association, paying for three of them $49.50 each, and for four of them $46 each, by way of premiums. The then anticipated value of each share was $200, which value, however, to the owner, depended upon his fulfilling all his obligations to the association. Lecroy was paid at the rate, on the loans he purchased, less the premium, which indicated their value at that time, that is, $1,400, less the premium. The association took no assignment of the stock from Lecroy as security at that time, but it is claimed that that was intended and understood, according to the custom and by-laws of the association, and that the omission was an oversight. The by-laws clearly make such provision.

The object Lecroy had in view in taking the loans was the purchase of a lot with the proceeds thereof, and the erection of a dwelling-house thereon. Of this money, $300 was paid by Lecroy for a lot, the deed of conveyance for which he had executed and delivered to his wife. The wife executed a mortgage

NOTE.—The weight of authority is stated to be that a bill in chancery is inadmissible in another suit to prove complainant's admissions therein, *1 Phil. Evid. 258, 259; 2 Id. 923, 924; 2 Whart. Evid. ⸹ 1119; Trimmelstown v. Kemmin, 9 Cl. & F. 777; Kilbee v. Sneyd, 2 Moll. 208; Rankin v. Maxwell, 2 A. K. Marsh. 488; Rees v. Lawless, 4 Litt. 218; Owens v. Dawson, 1 Watts 149; Truby v. Seybert, 12 Pa. St. 104.* A bill for an injunction, not filed as an original bill, is not evidence, even between the same parties, *Driver v. Fortner, 5 Port. 9;* see *Rees v. Bowen, McC. & Y. 383;* nor is it evidence for the complainant, *Cawsey v. Driver, 13 Ala. 818; Dorsey v. Gassaway, 2 Harr. & Johns. 402;* nor is a bill by a wife against her husband and a third party evidence against him in a subsequent action by him against such third party, *Stetson v. Goldsmith, 30 Ala. 602;* nor is a bill for divorce evidence of complainant's marriage in a prosecution against him for bigamy, *Cooley v. State, 55 Ala. 162;* see *Schmidt v. Herfurth, 5 Rob. (N. Y.) 124; Henderson v. Cargill, 31 Miss. 367;* nor will the admissions of an administrator in a bill bind the estate, *Crandall v. Gallup, 12 Conn. 365;* nor to prove a fact which tends to sustain the title to partnership property sold by the firm, which fact is stated in a bill filed by one partner against another, and in the answer thereto, *Shaw v. McDonald, 21 Ga. 395;* nor will a petition in partition estop the petitioner from afterwards buying the share of one whose

Vanneman v. Swedesboro Loan and Building Association.

to the association for $1,400. The husband (Lecroy) did not join in executing this mortgage. All the money so advanced by the association was paid out by Lecroy, either for the title to the land, or for material and labor in the erection of a dwelling upon the land.

In 1876, Lecroy and his wife executed a mortgage upon the same premises to the present complainants, which were given to secure the principal sum then due, for which, with interest, they afterwards obtained a judgment at law, as will appear.

In December, 1879, Lecroy and his wife executed a bond to the association to secure the amount of said loan, with the condition that if they should pay to the association the interest on $1,400, with the regular monthly instalments of $1 per share on seven shares of capital stock of the association, owned by the said Lecroy, on the first Monday of each month, until the surplus assets of said association shall be sufficient, over and above its debts and liabilities, to pay on each unredeemed share the sum of $200, the said bond should be void, and in case they failed so to pay for six months, then the said $1,400 should be due, and said bond be in full force and virtue. To this bond was

---

title the petition denied, *Richardson* v. *Cambridge, 2 Allen 118;* see *Turner* v. *Baker, 64 Mo. 218; Illinois R. R.* v. *Cobb, 64 Ill. 143; Owen* v. *Bartholomew, 9 Pick. 519; Warfield* v. *Lindell, 30 Mo. 272, 287;* nor from maintaining ejectment for the whole premises, *Werkheiser* v. *Werkheiser, 3 Rawle 326;* nor will a bill by A and his wife, and sworn to by A, against the defendant, in which the title of certain goods is said to be in them, prevent A alone from recovering the goods of the defendant, *Beatty* v. *Randall, 3 Allen 441;* see *Derby* v. *Derby, 6 C. E. Gr. 51;* nor will a bill by one partner against his copartner, to compel a dissolution, notwithstanding and ignoring an award, be evidence against complainant as to his attitude towards such award, *Doupe* v. *Stewart, 28 U. C. Q. B. 192;* nor will a bill by A and B against C, to enjoin a judgment in ejectment obtained by C against B, alleging that the land belonged to A, and that B was only his tenant, conclude A in a subsequent action against him by C in reference to the premises, *Robbins* v. *Wolcott, 28 Conn. 396;* nor will an allegation in a bill that "a great part" of the principal of a mortgage is due, conclude complainant's claim that it is all due, *Hagan* v. *Ryan, 12 C. E. Gr. 236.*

But in some instances a bill has been allowed to be read to prove such admissions, *Wollett* v. *Roberts, 1 Ch. Cas. 64; Crawley* v *Phillips, 2 Sid. 220; Mountford* v. *Ranie, 2 Keb. 499; Medcalf* v. *Medcalf, 1 Atk. 65; Riley* v. *Adams,*

annexed a power of attorney to confess judgment. Lecroy and his wife joined in executing another mortgage on the said lot, to secure the payment of this bond. According to a certificate endorsed on this bond, judgment was entered thereon on the 6th of October, 1882, after the condition had been broken.

When this last bond and mortgage were executed and recorded, the scrivener ordered the cancellation of the prior mortgage made by Mrs. Lecroy alone. It appears that this was done without the assent or knowledge of the association.

In September, 1881, the association filed a bill against Lecroy and his wife, and the Vannemans (the complainants in this suit), seeking relief in the premises. The result of that suit was a decree declaring that the claim of the association was an equitable lien on said land, and was entitled to precedence over the mortgage of the Vannemans. The property was sold, but the amount realized was insufficient to pay the claim of the association, a large balance still being due. In September, Lecroy assigned all his right, title and interest in said stock to his wife, who, upon the same day, assigned it to the said association as

11 Mod. 276; Randall v. Parramore, 1 Fla. 409; Robbins v. Butler, 24 Ill. 387; Schwarz v. Sears, Walk. (Mich.) 19; Van Rensselaer v. Akin, 22 Wend. 553; Hammett v. Emerson, 27 Me. 308. In Cory v. Gertcken, 2 Madd. 40, a cross-bill was read.

A bill is thus admissible if sworn to, Adams v. McMillan, 7 Port. 73; Durden v. Cleveland, 4 Ala. 225; McRea v. Ins. Bank, 16 Ala. 755; Callan v. McDaniel, 62 Ala. 96; Stump v. Henry, 6 Md. 201; Elliott v. Hayden, 104 Mass. 180; Siebert v. Leonard, 21 Minn. 442; Hall v. Guthrie, 10 Mo. 621; Cooper v. Day, 1 Rich. Eq. 26; although complainant is a feme covert, suing by her next friend, McLemore v. Nuckolls, 37 Ala. 662; but see Savage v. Dowd, 54 Miss. 728; or if the bill was authoritatively signed by counsel, Brown v. Jewett, 120 Mass. 215; see Dennie v. Williams, 135 Mass. 28; Dowyelot v. Rawlings, 58 Mo. 75; but not unless so signed, Belden v. Davies, 2 Hall 433; see Guy v. Manuel, 89 N. C. 83; Putnam v. Day, 22 Wall. 60; Hurst v. Jones, 10 Lea 8; Combs v. Hodge, 21 How. 397; but not sworn statements therein made on information by others, Hall v. Guthrie, 10 Mo. 621.

And so of the averments in a declaration, Bliss v. Nichols, 12 Allen 443; Brown v. Littlefield, 7 Wend. 454; see Oppenheimer v. Edney, 9 Humph. 385; or in a writ, Robison v. Swett, 3 Me. 316; or a libel brought by a trustee, and afterwards introduced for the benefit of his cestui que trust, Church v. Shelton, 2 Curt. C. C. 271.

Vanneman *v.* Swedesboro Loan and Building Association.

collateral security. As I understand the admission of counsel for the complainants, there is still a balance due to the association over and above the value of these shares of stock.

The Vannemans, recovering nothing upon the sale of the land, obtained judgment against Lecroy, and by their present bill attack the said assignment of stock by Lecroy to his wife, and by her to the association. They insist that the assignment was made for the purpose of defrauding them, as creditors of Lecroy. The principal facts relied upon to establish the fraud have already been given, except the statement that the association, in its bill to foreclose the said mortgage given by Mrs. Lecroy alone, *alleged that the loan was made to her*, and also, except the fact that the president of the association applied to Lecroy to assign to it his said stock. Lecroy says :

"I don't know that I can give his exact language; the substance is this: inasmuch as it is nearly or quite certain that Vanneman could get possession of the property, it would be but fair and just that the association should have what money it had paid."

At that time it had not been determined whether the claim of

It was held competent to prove that complainant's demand was stale, *Handeside* v. *Brown, 1 Dick. 236 ;* that such a bill had been filed by a tenant for life, in a subsequent suit against the remaindermen, *Nangle* v. *Smith, 1 Irish Eq. 119 ;* a sworn bill which admits that certain property in dispute was sold under execution, dispenses with defendants producing the *fi. fa., Jones* v. *Thacker, 61 Ga. 329 ;* by an infant's guardian read against them, after they arrived at full age, without objection, *McConnell* v. *Bowdry, 4 Mon. (Ky.) 392 ;* but see *Crump* v. *Gerock, 40 Miss. 765 ;* by defendant's recognizing plaintiff's title to lands under a conveyance from an attorney with limited authority, *Ib. ;* a complaint against a third person for damages, *Hammat* v. *Russ, 16 Me. 171 ;* a sworn bill is available against one claiming the same lands, under the complainant, *Stump* v. *Henry, 6 Md. 201; Parkhurst* v. *McGraw, 24 Miss. 134 ;* and against complainant's heirs, *Chipman* v. *Thompson, Walk. (Mich.) 405 ;* children, to support their legitimacy, may introduce a bill for divorce filed by one parent against the other, charging their marriage, and also the answer of the other parent admitting it, *Henderson* v. *Cargill, 31 Miss. 367 ;* see *Cooley* v. *State, 55 Ala. 162.*

If a bill has been amended, the original bill cannot be read against complainant as evidence to prove what he considered his right at the time of filing it, *Hales* v. *Pomfret, Dan.: 141 ; Ponce* v. *McElvy, 51 Cal. 222 ; Kimball* v. *Bellows, 13 N. H. 58 ;* nor can complainant himself so use it, *Pearsall* v. *McCart-*

the association was a lien upon the premises prior to the mort-gage of the Vannemans or not. Its claim to priority was sub-sequently very earnestly resisted by the Vannemans.

Was the conduct of the parties fraudulent? Lecroy owed the association at the time of the assignment, therefore the assign-ment was not *voluntary;* for, notwithstanding the sale of the lot and the application of the proceeds thereof to the claim of the association, the present value of the stock will not liquidate the balance still due. I say, not voluntary, because Lecroy not only purchased the loans, as a stockholder, but afterwards made his bond to the association for the amount borrowed, as above re-cited, showing an unquestioned liability, which must stand in any court, until its *bona fides* shall have been successfully im-peached, which has not been done in this case, nor attempted. It is true, the insistment is that the assignment to the wife was a gift, being, as to her, without consideration, and therefore void as to creditors; but I do not find that it was intended as a gift to the wife. The intention of the husband was to assign his stock to the association, which he did by first assigning it to his wife. That there was no necessity for this roundabout method is plain enough; but I cannot perceive that this course can be regarded as a badge of fraud.

But the present complainants insist that the association, hav-

ney, 28 Ala. 110; Fogg v. Edwards, 20 Hun 90; see Mulligan v. Illinois R. R. Co., 36 Iowa 181; Johnson v. McGrew, 42 Iowa 555; Iowa County v. Huston, 43 Iowa 485.

As to a bill of particulars, see Hartell v. Seybert, (Pa.) 1 T. & H. Pr. ¿ 475.

But the original may be resorted to, in order to impeach his testimony at the hearing, Johnson v. Powers, 65 Cal. 179.

As to an answer which has been superseded by another, see Mecham v. Mc-Kay, 37 Cal. 154; Daub v. Englebach, 109 Ill. 267; Boots v. Canine, 94 Ind. 408; Strong v. Dwight, 11 Abb. Pr. (N. S.) 319; Winchester v. Evans, 3 Hayw. 305; Adams v. Utley, 87 N. C. 356; Guy v. Manuel, 89 N. C. 83; Hurst v. Jones, 10 Lea 8; Kenah v. Steam Tug John Markee (U. S. C. C., E. D. Pa.), 14 Rep. 646.

How far a complainant is bound by statements in a bill which was dis-missed, see Mulvey v. Gibbons, 87 Ill. 367; Winship v. Winship, 43 Ind. 291; Shepard v. Pratt, 32 Iowa 296; Samuel v. Sayre, 5 Dana 230; Bore v. Quierry, 4 Mart. (La.) 545; Brown v. Feeter, 7 Wend. 301; Carr v. Emory College, 32 Ga. 557; Smith v. Harrell, 16 La. Ann. 190; Isaac v. Clarke, 2 Gill 1.—Rep.

ing accepted a bond and mortgage from Mrs. Lecroy alone, thereby made her its debtor, and released her husband, and consequently must look to her and to her separate estate alone. This view they seek to enforce by presenting the bill filed in the suit above named, in which the association declared that they had loaned the money to Mrs. Lecroy, and thereby sought to strengthen their hold for equitable relief. It is urged that the association making such an allegation, and obtaining a decree in their favor under such a bill, cannot now question or gainsay the allegation, the allegation not only having been made in a judicial proceeding, but the court having solemnly adjudged it to be true; citing *Lore* v. *Truman, 10 Ohio St. 45,* and the *Duchess of Kingston Case, 11 St. Tr. 291; McGee* v. *Smith, 1 C. E. Gr. 462, 466; 1 Greenl. Ev.* § *205,* and *1 Whart. Ev.* § *887.*

This legal proposition, to the extent it has been established, cannot, by its own force, control this case, because the decree was not founded alone, if at all, on the relation of debtor and creditor, but upon the equitable rights in behalf of the association springing out of the transaction, which otherwise had and could have no foundation. The debt was regarded as the debt of the husband, and the act of the wife was regarded as an effort on her part to secure and pay that debt by a lien on her land, as in equity she might, provided her husband joined. To support this view I found numerous cases in our own state. It was decreed that the amount of the money actually expended in paying for the land and for material and labor, was an equitable lien on the land. Hence it cannot be said that the court has adjudged that Mrs. Lecroy was the debtor, and that the association are therefore estopped from saying anything to the contrary. Very different from this is the case of *McGee* v. *Smith,* where an answering defendant was held to be estopped by the allegations in her answer, a vendee having purchased upon the faith of such answer, and upon reliance in the truth of its statements.

In this, as in every other investigation in this form, when the equitable rights of suitors are sought for, the intention of the parties is always of great importance, especially where that intention can be easily discovered and a decree founded thereon with-

out doing any actual injustice to any third party. In this case, Lecroy purchased the loans, and his wife did not. Lecroy therefore became the debtor, and years afterwards gave a bond to secure it. With this money he bought the land named and built on it, taking the title in his wife's name. The association proceeded against her and against this land, because the title was in her name, and because all the money for which the husband had become liable had been expended in the purchase of the land and in making the improvements thereon, and because she had executed said mortgage, showing an intention to bind her interest creating the lien already mentioned. I say the intention is always of great importance in such cases, when no injustice will be done to third parties by giving effect to that intention. Will any injustice be done to the complainants in this case by permitting the transaction between Lecroy and the association, by which Lecroy paid his just obligations, to stand? As in every such case, the influence of such transactions upon the conduct of the third party is always a material consideration. Were the complainants in anywise influenced or controlled by the dealings between the association and Lecroy in giving and receiving the bond and mortgage of the wife, or especially by the transfer of the stock to the association as collateral to the payment of his indebtedness? There is nothing in the case to indicate such influence. Lecroy became a debtor to the association in 1872, and, as I have said, there is nothing to indicate that his liability was discharged by the association accepting a bond and mortgage from the wife, nor that the present complainants changed their situation because of that fact. The indebtedness of Lecroy to the present complainants was created in 1876, nothing whatever appearing that it originated from or had anything to do with the stock transactions between Lecroy and the association. With this field before us, can it be said that fraud anywhere appears? If the payment of this claim by Lecroy should be declared to be fraudulent, then might not the same be said in behalf of any creditor who is not first paid, and who fails to find sufficient assets to satisfy his judgment? It seems as though that result would follow in every case. Had Lecroy had the money he could

Vanneman *v.* Swedesboro Loan and Building Association.

have safely paid the debt. If the insistments of the complainants be true that said stock belonged to Lecroy in 1881, at the time of the assignment, Lecroy could have sold it, and with the proceeds discharged any legal liability. It would, therefore, most surely follow that he could discharge any such liability by the transfer of the stock itself, there being no *actual* fraud, or, in other words, the transaction being *bona fide.*

As to the effect of the statements in the bill filed in the former suit, by the association, see *1 Greenl. on Ev.* § *278,* where that learned author regards the admissions made in a bill in chancery as very feeble evidence, so far as they may be taken as the suggestion of counsel. In *Doe* v. *Sybourn, 7 T. R. 2,* Lord Kenyon, C. J., said : " A bill in chancery is never admitted in evidence further than to show that such a bill did exist, and that certain facts were in dispute between the parties, in order to let in the answers or depositions of the witnesses." In *Boileau* v. *Rutlin, 2 Exch. 665, 12 Jur. 899,* the law is stated thus : " A bill in chancery is not evidence against the party in whose name it is filed, unless his privity to it is shown. Where that privity is established, the bill is admissible to prove the fact that such a suit was instituted, and what the subject of it was ; but it is not evidence, by way of admission, against the party by whom it was filed, of the truth of the facts alleged or stated in it." If this be the correct practice in ordinary cases, then surely it will apply in cases like the present, where the bill offered in evidence was filed by the counsel of a corporation. See, also, *Sweet* v. *Tuttle, 14 N. Y. 465, 470.*

I conclude that the allegation of fraud has not been sustained. The bill should be dismissed, with costs. I will so advise.